IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN HEART, | CASE NO. 1:20-CV-01800-JG |
| Plaintiff, | JUDGE JAMES GWIN |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

INTRODUCTION

Plaintiff John Heart filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying supplemental security income ("SSI"). (ECF #1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On May 20, 2021, this matter was reassigned to me pursuant to General Order 2021-06 (non-document entry dated May 20, 2021). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

PROCEDURAL BACKGROUND

Mr. Heart filed for SSI on September 12, 2017,[1] alleging a disability onset date of October 29, 2015. (Tr. 63-88). His claims were denied initially and on reconsideration. (*Id.*). Mr. Heart then

---

[1] The Commissioner's brief indicates Mr. Heart applied for benefits in February 2018. (Def.'s Br., ECF #20, PageID 645). The ALJ references February 18, 2018, as the application date. (Tr. 21). September 12, 2017 is referenced on the application and is provided as the date of application elsewhere in the record. (*See* Tr. 63-88, 122).

requested a hearing before an administrative law judge. (Tr. 93-95). Mr. Heart (acting *pro se*) and a

vocational expert ("VE") testified at a hearing before the ALJ on November 20, 2018. (Tr. 31). On

April 4, 2019, the ALJ issued a written decision finding Mr. Heart not disabled. (Tr. 16-26). The

Appeals Council denied Mr. Heart's request for review, making the ALJ's decision the final

decision of the Commissioner. (Tr. 3-7; *see* 20 C.F.R. §§ 416.1455, 416.1481). After requesting

and receiving an extension of time to file (Tr. 1-2), Mr. Heart timely filed this action on June 23,

2020 (ECF #1).

FACTUAL BACKGROUND

## I. ADMINISTRATIVE HEARING

On November 20, 2018, Mr. Heart appeared *pro se* at an administrative hearing before the

ALJ. (Tr. 31-62). Also present at the hearing was a VE. (Tr. 31). The ALJ provided Mr. Heart the

opportunity to postpone the hearing to obtain counsel if he wished; Mr. Heart elected to waive his

right to representation and proceeded *pro se*. (Tr. 33-34).

Mr. Heart testified he has training in medical coding, a Bachelor's degree in Arts, and a

Master's degree in Public Administration. (Tr. 40, 45). He had previously worked full-time as an

HR Assistant at a nonprofit. (Tr. 37). This position was a desk job that permitted him to remain

seated at least two-thirds of the workday and did not require him to lift heavy objects. (Tr. 37-38).

Around 2007, Mr. Heart had worked in medical coding, another desk job. (Tr. 39-40). Mr. Heart

also testified he had not worked for a period while undergoing hernia repair surgery and while

attending school full time. (*Id.*).

Mr. Heart lived alone in public housing and paid rent monthly through a loan. (Tr. 42).

Mr. Heart testified to having a driver's license, which he used to go to the grocery store twice per

2

week. (Tr. 43). Mr. Heart constantly communicated with his friends online. (Tr. 56-57). He also testified to meeting with neighbors twice a week for about twenty minutes at a time. (Tr. 57).

Mr. Heart testified he was unable to work because of residual pain due to complications from an inguinal hernia repair surgery. (Tr. 45-46). Nerve damage and scar tissue from the hernia repair caused him shooting pains. (*Id.*). At the time of the hearing, Mr. Heart rated his pain at around a three on a ten-point scale. (Tr. 47, 50). Mr. Heart testified he would wake up with pain at about level one, but the pain would increase throughout the day based on his degree of activity. (Tr. 47-50). Mr. Heart stated his pain would increase to level two after 10 minutes of walking, and it was "impossible" for him to continue walking past 45 minutes. (Tr. 49).

Mr. Heart stated that anti-inflammatory injections had not worked to relieve his pain, and his physician recommended against surgical intervention. (Tr. 51). However, Mr. Heart did see some improvement with physical and ultrasound therapies. (*Id.*). Mr. Heart did not take prescription painkillers, but testified to taking the maximum daily dose of naproxen to relieve his pain. (Tr. 52). Because of the pain and complications from the surgery, Mr. Heart testified he was unable to walk, sit, or stand for any length of time and had difficulty sleeping. (Tr. 53). He testified he could not lift any amount of weight and was unable to walk around for an eight-hour day. (Tr. 56).

Mr. Heart testified he also had secondary polycythemia, a disorder causing thickening of the blood. (Tr. 60). This condition caused Mr. Heart constant fatigue. (Tr. 60-61).

The VE testified that Mr. Heart's past relevant jobs were as a Human Resources Assistant, classified as sedentary, semi-skilled work at SVP (Specific Vocational Preparation) 4, and as a Medical Coder, light, skilled work at SVP 6. (Tr. 58-59). The ALJ asked the VE the following

3

hypothetical: "assume an individual with the Claimant's age, education, and work experience, who can perform the full range of medium work. This individual can occasionally stoop and occasionally crouch." (Tr. 59). The VE testified both of these past jobs could be performed below a medium exertional level and would not be impeded by the stooping and crouching limitations. (*Id.*). The ALJ then limited the hypothetical to an individual who could lift and carry for five to ten minutes in an eight-hour day, stand or walk fifteen minutes in an eight-hour day, and could sit for two hours in an eight-hour workday. (*Id.*). Based on the restrictions provided in Exhibits 8F (physical/occupational therapy records) and 9F (medical source statement), Mr. Heart would be classified as able to perform less than sedentary work and unable to engage in competitive work. (Tr. 59-60; *see also* Tr. 494-97). The VE testified work would be precluded at that level, as even sedentary jobs would require up to two to three hours standing. (Tr. 59-60).

## II.    PERSONAL AND VOCATIONAL EVIDENCE

Mr. Heart was born on March 7, 1978 and was 39 years old when his application was filed. (Tr. 65). He was therefore defined as a younger individual age 18-44. (*Id.*; *see also* 20 C.F.R. § 416.963). Mr. Heart has not been engaged in work meeting the standard of "substantial gainful activity" ("SGA") under the Social Security Act ("Act") since February 18, 2018. (Tr. 21; *see also* 20 C.F.R. § 416.972). Mr. Heart has past relevant work experience as a Human Resource Assistant and as a Medical Coder. (Tr. 25-26).

## III.    RELEVANT MEDICAL EVIDENCE[2]

Mr. Heart had surgery on October 29, 2015 to repair a left inguinal hernia. (Tr. 500).

---

[2]      Mr. Heart challenges only the ALJ's determination that he was not disabled due to complications from his hernia repair surgery. (Pl.'s Br., ECF #15, PageID 600-608). As such, he

4

The hernia was repaired with mesh; Mr. Heart tolerated the procedure well and was taken to the recovery room in good condition. (Tr. 516-17).

Two years later, on March 3, 2017, Mr. Heart met with J.P. Wornock, M.D., to establish care. (Tr. 474). At this appointment, Dr. Wornock assessed Mr. Heart with deep inguinal pain at the hernia surgery site. (*Id.*). Dr. Wornock prescribed Mr. Heart with a topical gel for the pain, as Mr. Heart had declined narcotic pain relievers. (*Id.*). The topical creams did not relieve Mr. Heart's pain and on April 28, 2017, Dr. Wornock referred Mr. Heart to physical therapy, recommending up to 12 visits. (Tr. 472).

On May 3, 2017, Mr. Heart began physical therapy with Hayden Dorsett, P.T., who believed Mr. Heart's rehabilitation potential was good and he would need physical therapy services twice per week for four weeks. (Tr. 220-24). At this initial evaluation, Mr. Heart's mobility was 40% to less than 60% impaired, he could walk a half mile without limping, his current pain was 2/10, and pain severity at worst was 8/10. (Tr. 220, 222). Mr. Heart's pain at the site was at a level three, indicated by wincing and withdrawal. (Tr. 221). However, multiple diagnostic tests to determine pain pathology, such as Scour, FABER, Ober's, and straight leg raise tests, were all negative. (*Id.*).

Mr. Heart's next physical therapy appointments report similar findings. (*See* Tr. 228-33). At his visit on May 17, 2017, Mr. Heart reported he was able to walk for 20 minutes before having pain in his left groin for 30 minutes and subsequent discomfort for an hour. (Tr. 234). Mr. Heart tolerated treatment with minimal complaints of pain and difficulty and was not found to be tender

waives argument on issues not raised in the opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). I have summarized here the medical evidence only as to this claim.

in the lumbrosacral spine. (Tr. 236). Mr. Heart's left iliacus muscle was tight and restricted. (*Id.*).

By May 19, Mr. Heart's reports of pain on palpation were reduced to level two (pain with wincing)

except for his inguinal ligament, which he rated at level three (wincing and withdrawal). (Tr. 238).

Scour, Faber, Ober's, and straight leg tests remained negative. (*Id*). In Mr. Dorsett's opinion, Mr.

Heart's pain was due to weak lower abdominal muscles; Mr. Heart was compensating with his left

iliopsoas muscle, causing the dysfunction in his left hip and groin. (Tr. 239-40). Appointments

from May 22 through his re-evaluation on June 22, 2017 report similar findings. (*See* Tr. 241-59).

At his re-evaluation appointment on June 22, 2017, Mr. Heart reported a decrease in his

inguinal pain after therapeutic interventions. (Tr. 258). Mr. Heart's mobility increased to 20% to

less than 40% impaired. (Tr. 257).

Appointments in June through discharge in August 2017 report similar findings of

improved mobility and decreased pain. (Tr. 260-70, 283-98, 303-06; *cf.* 273, 281, 301). By his

discharge on August 16, 2017, Mr. Heart's muscle pain on palpation was rated at level zero (no

tenderness noted) and pain on palpation of his inguinal ligament was rated at level one (complaint

of pain). (Tr. 308). At that appointment, Gail Madill, P.T., included the following statement: "In

my professional opinion, this client exhibits a good prognosis at time of discharge from skilled

rehabilitative therapy in conjunction with a home exercise program. . . . From the initiation of

treatment to discharge the patient's status is improved." (Tr. 310). Ms. Madill noted that Mr.

Heart continued to report a pulling sensation in his left groin with increased activity, but also

stated that he demonstrated "improved abdominal support during all dynamic activities" and

could ambulate without pain for 20 minutes. (*Id.*). Although Mr. Heart did not fully meet all

physical therapy goals, Ms. Madill noted that at the beginning of treatment, Mr. Heart had been

unable to touch the surgical site without pain; by the end of treatment, he had no tenderness on palpation and could perform abdominal scar tissue mobilization pain free. (Tr. 312-13).

On August 20, 2018, Mr. Dorsett provided a letter that Mr. Heart could only walk/stand for 15-20 minutes, sit for 1-2 hours, and could only lift/carry for 5-10 minutes. (Tr. 494). Dr. Wornock later cosigned this letter. (Tr. 496).

In December 2017, state agency consultant Ramona Bates, M.D., reviewed the medical evidence in Mr. Heart's file. (Tr. 65-75). Dr. Bates found that Mr. Heart had chronic left groin pain after inguinal hernia repair, and had undergone conservative pain management including trigger point injections and physical therapy. (Tr. 72). Dr. Bates found Mr. Heart able to prepare simple meals, drive, and shop, but he had problems with lifting, standing, walking, and sitting. (*Id*). Mr. Heart was determined able to work at a medium exertional level, could lift 25 pounds frequently and 50 pounds occasionally, and could stand and walk for up to six hours per day, with occasional stooping and crouching. (Tr. 73-74). As such, Mr. Heart was determined not disabled. (Tr. 74).

Mr. Heart's medical evidence was reviewed by another state agency consultant, Rita Allbright, M.D. (Tr. 78-88). Dr. Allbright agreed with Dr. Bates' assessment that Mr. Heart could perform work at a medium exertional level, and provided the same restrictions. (Tr. 85-87). Both Dr. Bates and Dr. Allbright assessed Mr. Heart's hernia condition under Listing 5.02 (GI Hemorrhage). (Tr. 70, 83).

### THE ALJ'S DECISION

The ALJ's decision included the following findings of fact and conclusions of law:

1.  The claimant has not engaged in substantial gainful activity since February 18, 2018, the application date (20 CFR 416.971 *et seq.*).

2.     The claimant has the following severe impairment: residual left groin pain from inguinal hernia repair in 2015 (20 CFR 416.920(c)). The claimant has the following non-severe impairment: alleged cancer/polycemia vera [*sic*].

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c). He can occasionally stoop and occasionally crouch.

5.     The claimant is capable of performing past relevant work as a human resource assistant and medical coder. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.     The claimant has not been under a disability, as defined in the Social Security Act, since February 18, 2018, the date the application was file. (20 CFR 416.920(f)).

(Tr. 21-26).

### STANDARD OF REVIEW

In reviewing a denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a

preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security,* 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up). A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted).

Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). *See also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner

follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is

disabled:

1.    Was claimant engaged in a substantial gainful activity?

2.    Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.    Does the severe impairment meet one of the listed impairments?

4.    What is claimant's residual functional capacity and can claimant perform past relevant work?

5.    Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One

through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to

establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

The ALJ considers the claimant's RFC, age, education, and past work experience to determine if

the claimant could perform other work. *Id.* Only those claimants who satisfy each element of the

analysis, including inability to do other work, and meet the duration requirements, are determined

to be disabled. 20 C.F.R. § 416.920(b)-(f). *See also Walters*, 127 F.3d at 529.

DISCUSSION

Mr. Heart is proceeding *pro se* in this matter. As such, this Court liberally construes his

pleadings and arguments. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) ("The appropriate

liberal construction [of *pro se* pleadings] requires active interpretation in some cases . . . ."). But

even though *pro se* pleadings are generally held to less stringent standards than those presented by

counsel, liberal construction of *pro se* pleadings is not without its limits. *Erwin v. Edwards*, 22 F.

App'x 579, 580 (6th Cir. 2001). Liberal construction does not require this Court to conjure

10

allegations on a plaintiff's behalf, and *pro se* pleadings must provide notice to the opposing party of the relief sought. *Id.*

With this preface, I consider Mr. Heart's arguments[3] as follows: (1) the ALJ erred in finding Mr. Heart's complaints did not meet Listing 5.02; (2) the ALJ improperly discounted the medical opinion evidence; (3) the ALJ improperly discounted Mr. Heart's subjective symptoms of pain; and (4) the RFC was not supported by the evidence in the record. (Pl.'s Br., ECF #15, PageID 601-06).  The Commissioner responds that substantial evidence supports all four of the issues Mr. Heart raises. (Def.'s Br., ECF #18, PageID 623-39). I agree with the Commissioner.

## I.  Substantial evidence supports the ALJ's finding that Mr. Heart did not meet a medical Listing.

Mr. Heart takes issue with the ALJ's finding that Mr. Heart did not meet the requirements of Listing 5.02 (gastrointestinal hemorrhaging requiring blood transfusion), and asserts that his impairment should have been evaluated under Listing 1.02 (major dysfunction of a weight bearing joint). (Pl.'s Br., ECF #15, PageID 601). The Commissioner avers that the ALJ appropriately reviewed the entire record to find Mr. Heart did not satisfy the requirements for any medical listing. (Def.'s Br., ECF #18, PageID 623).

The claimant bears the burden of proof in steps One through Four, including the burden to demonstrate the claimed impairment meets Listing criteria. *Walters*, 127 F.3d at 529. Claimants can demonstrate they are disabled by presenting medical findings supporting a Listing equivalence.

---

[3]      Mr. Heart includes in his reply brief a postscript requesting relaxation of this Court's page limit requirements. (Pl.'s Reply Br., ECF #20, PageID 655). Mr. Heart was permitted to file his reply brief in full without the page limitations constrained by Local Rule 16.3.1. *See Franklin*, 765 F.2d at 84-85. Even so, however, I only considered those issues first raised in his initial brief before this Court and I did not consider the exhibit attached to his reply brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003).

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2009). However, these medical findings must be "equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original).

There is no Listing designated for the evaluation of hernias or complications stemming from their repair. Listings categorized within 5.00 cover the adult digestive system, and include complications resulting from these disorders, such as obstructions. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. As hernias present complications in the gastrointestinal system, they may properly be evaluated under Listing 5.02, as the ALJ did when following the prior administrative medical findings of Drs. Bates and Allbright. (Tr. 25, 70, 72, 83, 86). Although Mr. Heart argues the complications from his hernia surgery should be evaluated under Listing 1.02 for musculoskeletal disorders, he fails to meet his burden of demonstrating his impairment meets Listing 1.02 any more than it meets Listing 5.02. He has not shown how the lingering pain from his inguinal hernia repair meets Listing 1.02's criteria regarding disorders of a weight bearing joint, despite his assertions that the pain stems from his hip. (Pl.'s Reply Br., ECF #20, PageID 647).

Substantial evidence supports the ALJ's finding that Mr. Heart's impairment does not meet any Listing.

## II.    Substantial evidence supports the ALJ's evaluation of the medical opinion evidence.

Mr. Heart argues the ALJ improperly dismissed the medical opinion evidence provided by Dr. Wornock, Mr. Dorsett, and Ms. Madill, which all demonstrate Mr. Heart's difficulty ambulating. (Pl.'s Br., ECF #15, PageID 604-06). The Commissioner counters that Ms. Madill presents no medical opinion evidence, the ALJ may discount medical opinions, and above all, the

ALJ's decision was supported by substantial evidence. (Def.'s Br., ECF #18, PageID 626-34). I agree with the Commissioner and address the ALJ' evaluation of medical opinions below.

### A.   Ms. Madill presents no medical opinion evidence.

Mr. Heart asserts that the ALJ abused her discretion when interpreting Mr. Heart's medical records, including Ms. Madill's assessment at the end of his course of physical therapy. (Pl.'s Br., ECF #15, PageID 606; Pl.'s Reply Br., ECF #20, PageID 648-54). The Commissioner states that Ms. Madill's physical therapy records incorporate Mr. Heart's self-reported statements and do not constitute a medical opinion.

A medical opinion is a statement from a medical source about what a claimant can still do despite the claimant's impairments and whether the claimant has one or more impairment-related limitations or restrictions. 20 C.F.R. § 416.913. If a medical source's treatment notes include a regurgitation of the claimant's self-described symptoms or abilities, they do not constitute a medical opinion. *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011). When medical records consist of little more than the medical source recording a claimant's subjective complaints and presentation, they do not constitute a medical opinion. *Ray v. Saul*, No. 1:19-CV-01880, 2020 WL 5203493, at *9 (N.D. Ohio Sept. 1, 2020). Merely regurgitating a claimant's self-described symptoms does not make it per se credible, nor does it transform a medical record into a medical opinion. *Id.* (collecting cases).

Ms. Madill's physical therapy records contain numerous accounts of Mr. Heart's self-reported limitations and the pain he experiences. (*See* Tr. 249-313). Ms. Madill's assessment of Mr. Heart's ability on discharge is similarly replete with his self-reported limitations: he "tolerated today's treatment/therapeutic activity with minimal complaints of pain and difficulty;" he

"continues to report same pulling sensation in L groin with increased activity;" and he "continues to verbally report no changes in his physical condition and pain experienced." (Tr. 312). Despite Mr. Heart's self-reported pain and limitations, Ms. Madill provided that in her professional opinion, Mr. Heart exhibited a good prognosis at the time of discharge, had demonstrated improvement in his ability to ambulate without pain and had improved abdominal support during all dynamic activities. (*Id.*). The ALJ referred to Mr. Heart's ability to ambulate and Ms. Madill's discharge assessment in the decision. (Tr. 22, 24).

But Ms. Madill's recitation of Mr. Heart's subjective abilities does not transform her treatment notes or assessment into a medical opinion. The ALJ is not required to find these recitations persuasive. The ALJ thus properly considered the evidence presented in Ms. Madill's physical therapy records and incorporated them into the decision based on her evaluation against the record. I find no basis to overturn the ALJ's decision for the reasons Mr. Heart argues.

**B.  The ALJ's treatment of the opinions of Dr. Wornock and Mr. Dorsett was supported by substantial evidence.**

Mr. Heart argues the ALJ improperly ignored the work restrictions suggested in the opinions presented by Dr. Wornock and Mr. Dorsett. (Pl.'s Br., ECF #15, PageID 604-06). The Commissioner responds that the ALJ is not required to find the opinion persuasive and discounted the opinion according to 20 C.F.R. § 416.920c(a). (Def.'s Br., ECF #18, PageID 628-34).

According to 20 C.F.R. § 416.920c(a),[4] the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative

---

[4]    For claims filed on or after March 27, 2017, 20 C.F.R. § 416.920c governs. Mr. Heart filed his claim on September 12, 2017; therefore, § 416.920c is controlling.

14

medical finding(s)" including those from the claimant's medical sources. The ALJ is not required to defer, or give any specific evidentiary weight, to a medical opinion, and is not required to give a treating source controlling weight. 20 C.F.R. § 416.920c(a). Instead, the ALJ must articulate the consideration given to the medical opinions in the record, grounded in the two "most important factors": supportability and consistency. 20 C.F.R. § 416.920c(b). An ALJ is not required to give weight to a doctor's conclusory statements that are unsupported by objective criteria or treatment notes. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

Although the regulations presented in 20 C.F.R. § 416.920c eliminate physician hierarchy, deference to specific medical opinions, and assigning controlling (or other) weight to a treating physician's medical opinion, an ALJ must still articulate how the medical opinions were considered and how persuasive they were found. *Houston v. Saul*, No. 1:20-CV-1371, 2021 WL 2635376, at *11 (N.D. Ohio June 25, 2021). The intent of the Agency's revised regulations, including those contained in 20 C.F.R. § 416.920c, was "to re-focus judicial review on the critical issue of whether an ALJ's decision was supported with substantial evidence." *Id*. This Court reviews this articulation of persuasiveness to evaluate whether the ALJ properly considered the factors as set forth in the regulations. *Id*.

Here, the medical opinion letter provided by Mr. Dorsett and later co-signed by Dr. Wornock provides, in its entirety: "Due to Mr. John Heart's physical condition, please limit the following activities: Walking/Standing: 15-20 minutes Sitting: 1-2 hours Lifting/Carrying: 5-10 minutes." (Tr. 494, 496). In her opinion, the ALJ states she is unpersuaded by this medical

opinion due to its failure to provide a narrative explanation[5]—in other words, its lack of supportability—and its apparent contradiction with earlier opinions expressing Mr. Heart's good rehabilitation potential—*i.e.*, its inconsistency with the record. (Tr. 25). The ALJ was not bound by the conclusory restrictions contained in the medical opinion letter, particularly when those conclusory statements were not supported by treatment notes or objective documentation in the record. The ALJ appropriately considered the medical opinions provided by Dr. Wornock and Mr. Dorsett according to agency regulations. Substantial evidence supports the ALJ's finding that these medical opinions were inconsistent with the record as a whole. On review, I find no reason to overturn on this basis.

III.    **Substantial evidence supports the ALJ's consideration of Mr. Heart's subjective statements.**

Mr. Heart states that the ALJ erred when considering the state agency consultants' opinions and improperly found his subjective statements of pain not credible,[6] leading to a faulty RFC. (Pl.'s Br., ECF #15, PageID 602-04). The Commissioner counters that substantial evidence supports the ALJ's finding, and such finding is afforded significant deference by this Court on review. (Def.'s Br., ECF #18, PageID 634-38). I agree with the Commissioner.

---

[5]    Mr. Heart attempts to correct these deficiencies by attaching additional medical evidence. New evidence is not reviewable by this Court, unless the claimant shows the evidence is new and material and there was good cause for not presenting it in the prior proceeding. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Because Mr. Heart has not made any of these showings, I have not considered the additional evidence he provided.

[6]    The Agency did away with "credibility" determinations and now evaluates under the subjective symptom standard found in SSR 16-3p. *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). The reviewing court still provides considerable deference to the ALJ's assessment of a claimant's subjective complaints. *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020).

An ALJ follows a two-step process for evaluating an individual's symptoms. First, the Commissioner determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, the Commissioner evaluates the intensity and persistence of the individual's symptoms and determines the extent to which they limit the individual's ability to perform work-related activities. *Id.* At the second stage, the ALJ may consider evidence directly from the claimant, or gleaned from other medical and non-medical sources. *Id.* An ALJ may consider a claimant's daily household and social activities when evaluating a claimant's assertions of pain or other ailments. *Walters*, 127 F.3d at 532.

The ALJ is not required to accept the claimant's subjective complaints, and may discount the claimant's subjective testimony when the ALJ deems it inconsistent with objective medical and other evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). The ALJ's decision must include "specific reasons for the weight given to the individual's symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. The ALJ need not use any "magic words," as long as it is clear from the decision as a whole why the ALJ reached a specific conclusion. *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-CV-01617, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021).

An ALJ's determination of subjective evidence receives great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). This Court must accord great weight and deference to the ALJ's opinion of subjective evidence, due to the ALJ's opportunity to observe a claimant's demeanor during the hearing—an opportunity unavailable to this Court in its review.

*Jones*, 336 F.3d at 476. Absent compelling reason, this Court may not disturb the ALJ's analysis of the claimant's subjective complaints, nor the conclusions drawn from it. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019).

Here, Mr. Heart stated at the hearing that he gets shooting pain due to scar tissue, and the pain often ranges up to four on a ten-point scale. (Tr. 46-47). Mr. Heart asserted it was "impossible" for him to be active longer than 45 minutes. (Tr. 49). After 45 minutes of activity, he had to lay down for six hours before the pain subsided. (Tr. 48). But even with these reports of severe pain, the ALJ found Mr. Heart's alleged limitations inconsistent with his own testimony, the objective medical evidence, treatment history, and the opinions of agency reviewers. (Tr. 24).

In brief, the ALJ articulates the following in support: Mr. Heart's own testimony that physical therapy helped his symptoms, his treatment with no medications stronger than over-the-counter Aleve, his ability to prepare meals, clean, meet with friends, and carry out household chores. (*Id.*). The ALJ was persuaded by state agency consultants, who determined Mr. Heart's RFC of medium work, consistent with Mr. Heart's activities of daily living, his high level of overall functioning, lack of significant pain medication, and the benefits he received from conservative treatment. (Tr. 25).

The ALJ properly articulated her evaluation of Mr. Heart's subjective symptoms. Accordingly, I give deference to the ALJ's evaluation and decline to overturn on this basis.

**IV.    The ALJ did not err in finding Mr. Heart has an RFC of medium and can perform past relevant work.**

Mr. Heart alleges the ALJ erred in finding that Mr. Heart has the RFC to perform medium work based on the VE's testimony and that he is unable to perform any work, even his past work, which was performed at a sedentary level. (Pl.'s Br., ECF #15, PageID 601-02). The Commissioner

contends the ALJ did not err at Step Four in relying on the medium work hypothetical posed to the VE when determining Mr. Heart could perform his past relevant work. (Def.'s Br., ECF #18, PageID 638-39). I agree with the Commissioner. The ALJ appropriately considered Mr. Heart's RFC, found Mr. Heart's past relevant work was within that RFC, and the decision to find Mr. Heart not disabled at Step Four was supported by substantial evidence.

The ALJ alone is responsible to form an RFC appropriate to the claimant's abilities, supported by the ALJ's evaluation of the medical evidence. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The RFC is to be an assessment of the claimant's remaining capacity for work, once the claimant's limitations have been considered. *Id.* at 632. An ALJ is to consider all evidence in the record to evaluate the limiting effects of the claimant's symptoms, including daily activities, the nature of the alleged symptoms, efforts made to alleviate the symptoms, the type and efficacy of treatments, and other factors regarding the claimant's functional limitations. *Avery v. Comm'r of Soc. Sec.*, No. 1:19-CV-1963, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020). The ALJ also must determine the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." *Id.* An ALJ "is only required to incorporate those limitations which he has deemed credible" and may reject limitations or impose more restrictions. *Gant*, 372 F. App'x at 585. Doing so does not mean an RFC is not supported by substantial evidence. *Ross v. Comm'r of Soc. Sec.*, No. 14-11144, 2015 WL 1245830, at *11 (E.D. Mich. Mar. 18, 2015).

An ALJ may also rely on a VE's testimony in reaching this conclusion, so long as it accounts for the claimant's limitations. *Webb*, 368 F.3d at 633. But only the ALJ has the authority to determine a claimant's medical restrictions and the resulting RFC; the VE does not determine

which restrictions the claimant has in fact. *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019). Asking a hypothetical of a VE is not a finding and does not bind an ALJ to a VE's response. *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020). Rather, a VE's response to a hypothetical serves as substantial evidence of the claimant's ability or lack thereof. *Kessans*, 768 F. App'x at 535-36. An ALJ may pose a question regarding a hypothetical individual including several limitations, but later determine that the VE's response is not relevant as to the claimant's abilities. *Id.* To require an ALJ to rely on the VE's response to the most restrictive question involving a hypothetical individual would controvert the roles of the ALJ and the VE. *Id.*

Here, the ALJ posed two hypotheticals to the VE: one assumed a hypothetical individual of the same age, education, and work experience as the claimant, with the ability to perform the full range of medium work; the second hypothetical included the restrictions set forth in the medical source statement from Dr. Wornock and Mr. Dorsett. (Tr. 59). Ultimately, the ALJ found the record evidence supported Mr. Heart's RFC of medium, and as such, he was still capable of performing his past relevant work as a Human Resource Assistant and Medical Coder, both of which are performed at a sedentary level. (Tr. 23, 25). She therefore determined him not disabled at Step Four of the sequential analysis. (Tr. 25-26).

Mr. Heart argues that the ALJ should have relied on the more restrictive hypothetical presented to the VE: an individual limited to standing or walking for 15 minutes in an eight-hour workday. (Pl.'s Br., ECF #15, PageID 601, Tr. 59). Mr. Heart states—incorrectly—the VE was speaking to Mr. Heart's own abilities when responding to the ALJ's hypothetical: "the vocational expert at the ALJ hearing . . . testified that John [Heart] cannot perform even sedentary work according to his medically required work restrictions . . . because of his difficulty ambulating, John

[Heart] does not meet the minimum requirements for sedentary work." (Pl.'s Br., ECF #15, PageID 601). Therefore, because the VE testified to the hypothetical individual's inability to perform sedentary work, Mr. Heart was also unable to perform sedentary work. (*Id.* at PageID 601-02).

Mr. Heart's analysis is faulty. Mr. Heart conflates this hypothetical individual's inability to meet a sedentary RFC with his own purported inability to meet a sedentary RFC. This "less than sedentary" hypothetical is based on the same medical opinion letter the ALJ found inconsistent with the record. (*Compare* Tr. 59 *with* Tr. 494, 496). Transforming inconsistent evidence into a hypothetical posed to the VE does nothing to make it consistent with the record or reflective of Mr. Heart's RFC and controverts the VE's and ALJ's roles. As discussed above, this medical opinion letter was unpersuasive to the ALJ. The ALJ is not required to rely on a VE's testimony—nor incorporate restrictions into an RFC—based on evidence deemed inconsistent and unpersuasive.

I decline to recommend remand on this basis.

### CONCLUSION

Following review of the arguments presented, the record, and the applicable law, I find the ALJ's decision denying SSI is supported by substantial evidence. Therefore, I recommend that the District Court **AFFIRM** the Commissioner's decision.

Dated: October 22, 2021

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).